Filed by VT D.C.

ELECTRONIC

**March 26, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION
## CIVIL ACTION

Case No.:  **09-CV-60464-Moreno-Torres**

SANDRA JOHANNES and IRA BOSHNACK,
on behalf of themselves and all others similarly
situated,

   Plaintiffs,

vs.

DIRECTV, INC., a California Corporation;

   Defendant.

**JURY TRIAL DEMANDED**

---

### CLASS ACTION COMPLAINT

  Plaintiffs, SANDRA JOHANNES and IRA BOSHNACK, by and through undersigned counsel, bring this action on behalf of themselves and all other persons similarly situated against the Defendant, DIRECTV, INC. (hereinafter "DIRECTV"), and alleges as follows:

### JURISDICTION AND VENUE

  1. Plaintiff, SANDRA JOHANNES ("Ms. Johannes"), is, and at all material times was, a resident of Miramar, Florida. Ms. Johannes was a DIRECTV customer from approximately July 2008 through August 2008, and was at all material times a "consumer" as defined by Florida Statutes § 501.203(7).

  2. Plaintiff, IRA BOSHNACK ("Mr. Boshnack"), is, and at all material times was, a resident of Coconut Creek, Florida. Mr. Boshnack is presently a DIRECTV customer

79278         1        Class Action Complaint

1 of 30

and has been continuously since August 2007.[1] At all material times Mr. Boshnack was a "consumer" as defined by Florida Statutes § 501.203(7).

3.    Defendant DIRECTV, Inc. is, and at all material times was, a California corporation with its principal place of business in El Segundo, California. DIRECTV is the largest direct-to-home satellite television provider in the United States with over 16.8 million subscribers located throughout the United States. DIRECTV is also the second largest multi-channel video programming provider in the United States.

4.    At all relevant times herein, DIRECTV conducted business in Broward County, Florida and was engaged in "trade or commerce" as defined by Florida Statutes § 501.203(8).

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a) (1) and (d). There is diversity of citizenship; the case is filed as a class action; the matter in controversy exceeds the value of $5,000,000, exclusive of interest and costs; and more than two-thirds of the members of the proposed class are citizens of a state different than Defendant.

6.    Venue is proper in this Court pursuant to 28 U.S. C. § 1391(c). DIRECTV regularly transacts business in, and is subject to personal jurisdiction in this District and the State of Florida.

## NATURE OF THE CASE

7.    This action is brought by the Plaintiffs as a class action on behalf of all DIRECTV customers in the State of Florida who have been subjected to DIRECTV's course of conduct as more fully described below.

---

[1] Ira Boshnack was previously a DIRECTV customer from approximately 2004 until 2006. The allegations in this complaint are unrelated to this initial service period. In August 2007 Mr. Boshnack cancelled his cable television service and became a DIRECTV customer again. The allegations of this Complaint pertaining to Mr. Boshnack arise from the service period that began in 2007.

---

8.      Plaintiffs, for themselves and on behalf of the Class described more fully below, seek injunctive, declaratory, equitable and monetary relief against DIRECTV to redress this unlawful conduct and to prevent this conduct from occurring in the future.

9.      Plaintiffs bring this consumer class action pursuant to the provisions of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201 ("FDUTPA") and the common law of Florida against DIRECTV for monetary and equitable relief to enjoin and redress the unlawful, unfair, deceptive or unconscionable acts and practices of DIRECTV related to its imposition of cancellation penalties on consumers.

10.     DIRECTV is a leading provider of satellite television services in the United States and engages in a uniform policy and practice of imposing unlawful cancellation penalties on customers that discontinue receiving DIRECTV's services.  These unlawful cancellation penalties often total as much as $480.  As purported justification for these unlawful charges, DIRECTV wrongly claims that customers "contract" to purchase its services for a specified period of time, typically 18 to 24 months (the "term commitment"). DIRECTV often withdraws the unlawful cancellation penalties directly from its customers' bank accounts or credit cards, using account information provided by the customers for other purposes at the time service was established, without their knowledge or consent.   The cancellation penalties bear no relation to the damage, if any, incurred by Defendants in connection with cancellation of service.

11.     As set forth below, DIRECTV has no right, contractual or otherwise to impose early cancellation penalties on its customers through use of self-help or otherwise.  Plaintiffs seek injunctive relief on behalf of current DIRECTV subscribers whom DIRECTV claims

are bound by a term commitment and seek monetary relief on behalf of former DIRECTV customers upon whom DIRECTV assessed an early cancellation penalty

12.     DIRECTV typically receives orders for initiation of service and orders for changes in service from existing customers by telephone. It is the pattern and practice of DIRECTV, when accepting orders for new service, to conceal from customers that DIRECTV imposes a term commitment for service and early cancellation penalty. Likewise, when accepting orders for changes in service, it is DIRECTV's pattern and practice to conceal from customers that DIRECTV will impose an additional extended term for service and early cancellation penalty running from the date of the change in service. It is also DIRECTV's pattern to engage in the self-help remedy of charging consumers' credit cards or bank accounts for the amount of the cancellation penalty without authorization or legal justification. DIRECTV engages in these self-help practices without the knowledge and consent of its customers.

13.     Notwithstanding DIRECTV's deliberate failure to inform customers of term commitments and early cancellation penalties, DIRECTV defends consumer complaints about these practices by asserting that class members agree to term commitments and early cancellation penalties at the time of initial installation, when malfunctioning equipment leased from DIRECTV is replaced or at any time a customer makes any change to their DIRECTV services. The language purporting to create this "agreement" appears on the back of a form customers are asked by installers to sign to acknowledge initial installment of DIRECTV equipment. DIRECTV installers are typically not employees of the company, but instead are independent third-party contractors. DIRECTV does not authorize or instruct its installers, whether employees or independent third-party contractors, to alert consumers to

the back of the form containing this language, let alone explain the terms of the form if customers have any questions.

14. As detailed below, DIRECTV's conduct in its dealings with Plaintiffs, Sandra JOHANNES and IRA BOSHNACK, was in keeping with the patterns and practices set forth above in paragraphs 10 through 14.

## FACTUAL ALLEGATIONS PERTAINING TO THE NAMED PLAINTIFFS

### SANDRA JOHANNES

15. SANDRA JOHANNES contacted DIRECTV in or about July 2008 using DIRECTV's toll free number to inquire about service. Ms. Johannes made it clear to the representative with whom she spoke that she had recently lost her job. She expressed that she was looking for ways to reduce her monthly expenses and was exploring whether DIRECTV could beat her local cable company's prices. The representative quoted Ms. Johannes a monthly cost of $45.00 with a one-time installation fee of $65.00. Ms. Johannes agreed to pay these amounts and arranged for a DIRECTV technician to install the equipment at her home.

16. The representative did not tell Ms. Johannes that she was agreeing to any type of term commitment nor did she tell Ms. Johannes that she may be subject to an early cancellation penalty. Similarly, the representative did not inform Ms. Johannes that she was agreeing to waive her rights to a jury trial and submit any dispute with DIRECTV to arbitration. Nor did the representative inform her that she was agreeing to waive her right to bring a class action against DIRECTV.

17. Soon after this conversation a DIRECTV technician installed DIRECTV's equipment in her home. The technician did not tell Ms. Johannes that she was agreeing to

any type of term contract nor did she tell Ms. Johannes that she may be subject to an early cancellation penalty.

18.    On August 12, 2008, Ms. Johannes received her first bill from DIRECTV. The bill reflected a monthly fee of $76.47 which far exceeded the monthly charge she agreed to.

19.    Ms. Johannes contacted DIRECTV and was told by supervisor "Patrice" that she would have to wait for a rebate in order to get the reduced price she had been quoted for her service. In addition she was informed that she would not receive all of the channels she originally ordered. This was the first time Ms. Johannes had been provided any information about a rebate or any reduction in her service.

20.    As a result of this new information Ms. Johannes cancelled her service, after which DIRECTV took money from her checking account as an unlawful cancellation penalty.

## IRA BOSHNACK

21.    In or about July 2007 IRA BOSHNACK was receiving cable television service from Comcast Corporation. In response to a DIRECTV promotional advertisement, Mr. Boshnack contacted DIRECTV, using DIRECTV's toll free number, to inquire about the promotion. Mr. Boshnack spoke with a representative who told him that if he purchased the necessary equipment and signed up for service pursuant to the promotion he would receive a Major League Baseball ("MLB") package at no charge for the remainder of the 2007. Mr. Boshnack changed his service to DIRECTV in reliance on this offer, and at the conclusion of this telephone conversation, purchased the equipment from DIRECTV and arranged to have DIRECTV install the equipment in his home.

22.    The representative did not tell Mr. Boshnack that DIRECTV would require him to return the equipment he had purchased, impose a term commitment, impose a cancellation penalty in the event he cancelled service prior to the end of that term, purport to require him to waive his rights to a jury trial and submit his claim to arbitration and to forfeit his right to bring a class action against DIRECTV.

23.    Sometime shortly thereafter a DIRECTV technician came to Mr. Boshnack's home and installed the equipment he had purchased.   The technician did not tell Mr. Boshnack that DIRECTV would impose a term commitment and impose a cancellation penalty in the event he cancelled service prior to the end of that term

24.    Within approximately one month after installation, Mr. Boshnack received his bill for service from DIRECTV.  The bill reflected a monthly service charge that included a charge for the MLB package and that therefore significantly exceeded the amount he had agreed to pay for the service under the promotion.

25.    Mr. Boshnack contacted DIRECTV to object to his bill.  He was informed for the first time that DIRECTV would not provide the service he had agreed to at the price he had agreed to and, as a result he decided to cancel his service.  Finally, he was informed for the first time that DIRECTV would assess a cancellation penalty of approximately $450.00 because it had imposed a two year term commitment on him.

26.    Because he would be charged an additional $450.00 penalty for cancelling, Mr. Boshnack did not cancel service. These conditions were wrongfully and unilaterally imposed on him without his consent.  As a result, Mr. Boshnack pays a higher monthly service charge than he had agreed to pay, does not receive the service that was originally

described to him by DIRECTV and will incur substantial additional damages if he cancels his service.

27.    Under the original term commitment improperly imposed by DIRECTV at the time of installation in July 2007, Mr. Boshnack would not be able to cancel service without imposition of the wrongful penalty until approximately July 2009.

28.    DIRECTV, however, extended his term commitment even longer.    In approximately March 2008, Mr. Boshnack purchased a new additional television set and arranged to have satellite service hooked to it by telephoning DIRECTV and arranging for service to be provided to this television.    At no time during this telephone call or at installation was Mr. Boshnack informed that DIRECTV would impose an additional two year term commitment for its service which would begin to run anew from March 2008.

29.    Sometime after arranging for service to this television set, Mr. Boshnack was informed by DIRECTV that it had imposed an additional two year contract term for his service which would run until March 2010, and that he would not be able to cancel service in July 2009 without penalty.

30.    Mr. Boshnack continues to want to cancel service but now cannot do so, without being assessed a substantial penalty, until March 2010.  As a result he will continue to pay a higher monthly service charge than he would pay for Comcast service and does not receive the service that was originally described to him by DIRECTV.

## DEFENDANTS' UNLAWFUL, UNFAIR AND DECEPTIVE BUSINESS PRACTICES IMPOSING EARLY CANCELLATION PENALTIES

31.    Plaintiffs' complaints concerning DIRECTV's imposition of early cancellation penalties are not isolated events.  The Internet contains scores of complaints

from customers complaining of Defendants' imposition of early termination penalties upon cancellation of service that DIRECTV then justifies by reference to uniform boilerplate language it embeds into the back of a form titled "Installation Checklist" that customers may be given at the time installation of the satellite equipment in their homes. DIRECTV also relies on this language to withdraw money from customers' accounts for unlawful cancellation penalties without their consent. When customers demand copies of these documents, DIRECTV routinely ignores the requests or responds that DIRECTV does not have the documents.

32.    DIRECTV routinely responds to consumer complaints about unlawful cancellation penalties, that its customers are provided a document referred to as the Lease Addendum on three occasions: 1) when DIRECTV's equipment is installed at a customer's residence; 2) when malfunctioning equipment leased from DIRECTV is replaced; or 3) when customers change their service. DIRECTV contends that this agreement is contained on the back of a form that installers, who are typically not employees of DIRECTV, provide to customers.

33.    On information and belief Plaintiffs allege that, at all relevant times herein, these installers are not instructed or authorized to call the customer's attention to the back of the form, let alone explain the terms of the form if customers have any questions.

34.    The Lease Addendum contains the term commitment. A copy of the Lease is attached hereto as "Exhibit A." It provides: "The programming package(s) must be maintained for a period of not less than (a) eighteen (18) consecutive months for accounts with only standard receiver(s), or (b) twenty-four (24) consecutive months for accounts with advanced product(s)/receiver(s) (DVR, HD, or HD DVR, including additional DIRECTV

receiver(s))." The document does not state when the period begins to run, or whether the customer is subject to the 18 or the 24 month period. It also does not state that the period will start over upon a change of equipment or programming

35.    Additionally, the Lease Addendum contains the early cancellation penalty provision. It provides, "If you fail to maintain your minimum programming commitment of 18 months for standard receivers and 24 months for advanced receivers, you agree that DIRECTV may charge you a prorated fee of up to $360 for standard receivers and up to $480 for advanced products/receivers (e.g. DVR, HD, HD DVR, etc.)." The document does not state whether the basis for proration is number of days, months or years the programming is retained, amount of usage, number of receivers, or some other basis entirely.

36.    The top paragraph of the Lease Addendum states that it "MUST BE READ TOGETHER WITH THE DIRECTV CUSTOMER AGREEMENT (A COPY OF WHICH IS PROVIDED TO YOU WITH YOUR FIRST BILL AND IS AVAILABLE AT WWW.DIRECTV.COM) FOR ALL OF THE TERMS AND CONDITIONS REGARDING THE PROVISION OF THE SERVICES AND YOUR RIGHT TO USE THE DIRECTV EQUIPMENT."

37.    A copy of the Customer Agreement is attached as Exhibit "B." The facially benign language above, which is contained in small print on the Lease Addendum, is as close as DIRECTV comes to informing customers of the DIRECTV Customer Agreement, let alone obtaining customers' agreement to the terms of the DIRECTV Customer Agreement. It is only the unsigned Customer Agreement, which customers never see until they receive their first monthly bill, that contains an arbitration provision as well as language purporting to authorize DIRECTV to engage in self-help.

## CLASS REPRESENTATION ALLEGATIONS

37.     The causes of action alleged and the relief sought herein are appropriate for class action treatment and class certification pursuant to the provisions of Rule 23(a) and (b)(2)and (b)(3) of the Federal Rules of Civil Procedure.

38.     Plaintiffs are a member of the Class described in Paragraph 40 below and properly allege these claims on behalf of themselves and on behalf of the Class who is similarly situated.

39.     The members of the Class are readily identifiable from objective records maintained by the Defendant, thus permitting appropriate notice to the Class and convenient case management by the Court.

### Class Definition

40.     The Plaintiffs properly allege the causes of action below on behalf of themselves and on behalf of the Class comprised of:

> **All current DIRECTV customers in the State of Florida that DIRECTV claims are bound by a term commitment and all former DIRECTV customers in the State of Florida who were assessed an early cancellation penalty by DIRECTV based upon a purported term commitment during the four years preceding the filing of the original complaint through resolution of this action. For purposes of the Class definition, DIRECTV customers include natural persons and businesses.**

41.     Excluded from the Class are Defendants and their affiliates, predecessors, successors, officers, directors, agents, servants, or employees, and the immediate family members of such persons.  Plaintiffs reserve the right to modify the class definition or propose one or more subclasses if discovery reveals such modifications are appropriate.

---

79278                                              11                                    Class Action Complaint

## Numerosity

42.     The precise number of Class Members is unknown, but can readily be determined from the records of DIRECTV. Plaintiffs reasonably estimate that the number of class members totals in excess of hundreds of thousands and may well exceed one million. As of December 31, 2007, DIRECTV reported its total number of subscribers nationwide to be 16.8 million. Thus, Plaintiffs reasonably believe that a significant number of DIRECTV customers reside in Florida and that, accordingly, the members of the Class are so numerous that separate joinder of each member is impracticable.

## Common Questions of Law and Fact

43.     There is a well-defined community of interest in the relevant questions of law and fact affecting putative class members. Common questions of law and fact predominate over any individual questions affecting class members, including, but not limited to the following:

a.     whether DIRECTV has engaged in false and misleading advertising in violation of Florida Statues. § 817.06(1);

b.     whether DIRECTV committed unlawful, unfair, unconscionable or deceptive business practices in violation of Florida's Deceptive and Unfair Business Practices Act, Florida Statute §§ 501.201 et seq. in its imposition and enforcement of term commitments, early cancellation penalties and/or self-help provisions;

c.     whether the provisions of DIRECTV's Customer Agreement are unconscionable, in violation of public policy or otherwise unenforceable, including but

limited to the term commitment, early cancellation penalty, self-help provisions, class action waiver, mandatory and non-mutual arbitration clause and choice of law provision;

      d.    whether DIRECTV has been unjustly enriched by imposing early cancellation penalties on its customers;

      e.    whether DIRECTV has taken advantage of its position and superior knowledge relative to the Plaintiffs and the Class in imposing term commitments and early cancellation penalties, and, as a result has received money and continues to benefit from money that does not rightfully belong to it;

      f.    whether Plaintiffs and the Class are entitled to injunctive, declaratory and other equitable relief against DIRECTV, including but not limited to disgorgement of early cancellation penalties imposed by DIRECTV;

      g.    whether DIRECTV's imposition of early cancellation penalties constitutes illegal liquidated damages under Florida law.

45.    The questions of law and fact that are common to the Plaintiffs and the Class predominate over any questions pertaining to any individual class members. The monetary relief sought by Plaintiffs and the Class is liquidated in nature, comprised of fixed sums certain, and readily susceptible of objective, arithmetic determination. The wrongs alleged, the right to bring the instant complaint and causes of action, and the remedies sought are all common to the Class.

46.    With respect to any class to be certified under Rule 23 (b) (2), the injunctive and declaratory relief sought herein predominates over the monetary relief which flows naturally from the equitable relief sought herein.

## Typicality

47.     Plaintiffs have the same interests in this matter as all the other members of the class, and their claims are typical of all members of the class.  If brought and prosecuted individually, the claims of each class member would require proof of many of the same material and substantive facts, rely upon the same remedial theories and seek the same relief.

48.     The claims of Plaintiffs and the other class members have a common origin and share a common factual and legal basis.  The claims originate from the same illegal, unfair and deceptive practices on the part of DIRECTV and its acts in furtherance thereof.

49.     All Class Members have suffered injury to their property by reason of DIRECTV's unlawful course of conduct in that they have paid, or are subject to, early cancellation penalties.

## Adequacy of Representation

50.     Plaintiffs' claims are more than sufficiently aligned with the interest of absent Class Members to ensure that the Class claims will be prosecuted with diligence and care by Plaintiffs as Class Representatives.  Plaintiffs are committed to pursuing this action, have a true stake in this case, and have retained competent counsel experienced in the prosecution and successful resolution of class litigation.  Plaintiffs will fairly and adequately represent the interests of Class and do not have interests adverse to the Class.

51.     Plaintiffs have retained the services of counsel, who are experienced in complex class action litigation, and in particular class actions involving consumer protection matters.  Plaintiffs' counsel will adequately prosecute this action, and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class embers.

## Class Treatment Is the Superior Method of Adjudication

52.     Class representation is superior to other methods of representation for the fair and efficient adjudication of the controversy because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications on the same essential facts, proof, and legal theories would also create and allow the existence of inconsistent and incompatible rights within the Class.

53.     Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a.     Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one class member has at stake;

b.     Very little individual litigation has been commenced over the controversies alleged in this Complaint in this jurisdiction, and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

c.     The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

d.     The proposed class action is manageable.

54.     Therefore, class treatment of Plaintiffs' claims is appropriate and necessary.

## COUNT I

### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### FLORIDA STATUTE § 501.201 et seq.

55.     Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1 through 54 as if fully set forth separately herein.

56.     Plaintiffs and all Class Members are "consumers" and the subject transactions are "trade or commerce" as defined by Florida Statute  § 501.203 (7) and (8) respectively.

57.     Florida Statutes § 502.301, *et seq.* was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.  DIRECTV's actions and/or omissions as described herein violate this statute in the following respects:

a.     Plaintiffs and Class Members were assessed and/or charged unlawful cancellation penalties that they were not informed of and did not agree to;

b.     Failing to disclose and/or failing to disclose adequately to Plaintiffs and Class Members the term commitments it imposes in association with DIRECTV programming service;

c.     Failing to disclose and/or failing to disclose adequately to class members that they would be charged an early cancellation penalty if they did not continue to subscribe to DIRECTV's programming services for the alleged term commitment;

d.     Failing to disclose and/or failing to disclose adequately to class members that early cancellation penalties would be deducted directly from class members' bank or credit card accounts;

e.    Including unconscionable and unenforceable terms and conditions in the Lease Addendum and Customer Agreement;

f.    Enforcing unconscionable and unenforceable terms and conditions against Class Members, including terms and conditions that Class Members never accepted or otherwise agreed to; and

g.    Collecting early cancellation penalties from Class Members and charging such fees directly to class members' bank account or credit card without authorization.

58.    The wrongful conduct described herein is ongoing and continuing. Unless Defendant is enjoined from continuing to engage in such wrongful conduct, members of the consuming public will continue to be damaged.

59.    As a result of such actions, Plaintiffs and members of the Class suffered damages.

## COUNT II

**UNJUST ENRICHMENT AND THE IMPOSITION OF A CONSTRUCTIVE TRUST**

60.    Plaintiffs reallege and incorporate by reference all allegations in paragraphs 1 through 54 above as if fully set forth separately herein.

61.    DIRECTV unlawfully obtained and now unlawfully retains money from Plaintiffs and the Class that it is not entitled to.

62.    As a result, a benefit has been conferred upon DIRECTV which DIRECTV is aware of and has voluntarily accepted and retained. DIRECTV will be unjustly enriched if it is allowed to retain these funds that were unlawfully acquired.

63.    As a result of the relationships between DIRECTV, the Plaintiffs and the Class, and the facts alleged above, a constructive trust should be established over all of the monies wrongfully obtained by DIRECTV.

64.    The wrongful conduct described herein is ongoing and continuing.  Unless Defendant is enjoined from continuing to engage in such wrongful conduct, members of the consuming public will continue to be damaged.

## COUNT III

### ASSUMPSIT OR MONEY HAD AND RECEIVED

65.    Plaintiffs reallege and incorporate by reference all allegations in paragraphs 1 through 54 above as if fully set forth separately herein.

66.    As a result of the conduct outlined above, the Defendant, DIRECTV took advantage of its position relative to the Plaintiffs and the Class and systematically exacted monies to which they were not entitled.  At all times in these transactions, due to the superior knowledge and position of DIRECTV, DIRECTV was able to illicitly obtain these funds without the consent of the Plaintiffs and the Class.

67.    The systematic exaction of this private property by DIRECTV as outlined above was achieved through acts which constituted an imposition, imposture and oppression.

68.    In equity and good conscience, Plaintiffs and the Class ought to have the relief they seek in this action, and the Defendant ought not to be permitted to retain and benefit from the funds it has have unlawfully acquired.

69.    By reason of the foregoing, Plaintiffs and the Class have been damaged and seek return of all of the unlawfully acquired early cancellation penalties.

70.    The wrongful conduct described herein is ongoing and continuing. Unless Defendant is enjoined from continuing to engage in such wrongful conduct, members of the consuming public will continue to be damaged.

## CAUSE OF ACTION IV

### DECLARATORY AND INJUNCTIVE RELIEF

71.    Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1 through 54 above as if fully set forth separately herein.

72.    Plaintiffs for themselves and on behalf of the Class, allege that there exists a bona fide, actual, present and practical need for a declaration as to the rights of the parties *vis a vis* the early cancellation penalties imposed by DIRECTV in that there is doubt, and a controversy presently exists between the parties and the Class as to the lawfulness of the cancellation penalties.

73.    Plaintiffs contend and DIRECTV denies that DIRECTV imposes early cancellation penalties that it has no contractual or legal authority to impose and that DIRECTV employs unlawful, unfair and deceptive business practices in the imposition of these cancellation penalties.

74.    Plaintiffs contend that, in the alternative, the early cancellation penalties imposed by DIRECTV constitute unlawful liquidated damages.

75.    Further, the DIRECTV's "customer agreement" found on its website, includes an arbitration agreement which Plaintiffs contend is unconscionable, unlawful and violates public policy and is, therefore, legally unenforceable.

76.    The defects in the arbitration agreement so permeate the agreement that the arbitration provisions cannot be cured by severance.

77.     The wrongful conduct described herein is ongoing and continuing.  Unless Defendant is enjoined from continuing to engage in such wrongful conduct, members of the consuming public will continue to be damaged.

78.     Plaintiffs, for themselves and the Class, seek injunctive relief enjoining DIRECTV from retaining any unlawfully imposed cancellation penalties and from collecting any additional unlawful cancellation penalties in the future.  Plaintiffs and the Class will have no adequate remedy at law and will be irreparably harmed by the retention of the cancellation penalties and, thus, will be irreparably harmed if injunctive relief does not issue herein.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed class, pray for judgment as follows:

A.      Certification of the proposed class pursuant to Federal Rules Civil Procedure Rule 23 (a), (b) (2) and (b)(3).

B.      Designation of Plaintiffs as representatives of the proposed class and designation of their counsel as class counsel;

C.      Judgment in favor of Plaintiffs and the Class and against DIRECTV;

D.      Award Plaintiffs and the Class Members restitution, disgorgement, actual, statutory and punitive damages, and attorneys' fees and costs, including pre-judgment and post-judgment interest thereon;

E.      Temporary, preliminary and permanent order for injunctive relief enjoining DIRECTV from continuing to engage in the business practices complained of herein;

F.    Such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: March 26 , 2009

Respectfully submitted,

By: _____

Scott Wm Weinstein, Esq.
Florida Bar No. 563080
MORGAN & MORGAN, P.A.
P. O. Box 9504
Fort Myers, FL 33906-9504
Phone: (239) 433-6880
Fax: (239) 433-6836
Email: sweinstein@forthepeople.com

CHRISTA L. COLLINS, LLC
Christa L. Collins, Esq.
FL Bar No. 0381829
1780 102nd Avenue North, Suite 100
St. Petersburg, Florida 33716
Tel (727) 578-9628
Tel (727) 578-3800
Fax (727) 578-3844
Email ccollins@clcfirm.com

SPRENGER & LANG, PLLC
Deanna D. Dailey, Esq.
MN Bar No. 293714*
Daniel C. Bryden, Esq.
MN Bar No. 302284*
310 4th Avenue South, Suite 600
Minneapolis, MN 55415
Telephone: (612) 871-8910
Facsimile: (612) 871-9270

SCHNEIDER WALLACE COTTRELL
BRAYTON & KONECKY, LLP
Todd Schneider, Esq.
CA Bar. No. 158253
Josh G. Konecky, Esq.
CA Bar No. 182897
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile (415) 421-7105

WATERS KRAUS & PAUL, LLP
Ingrid M. Evans, Esq.
CA Bar No. 179094
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102
Telephone: (415) 296-6060
Facsimile: (214) 777-0470
ievans@waterskraus.com

*Attorneys for Plaintiffs*

* *Pro Hac Vice* applications to be submitted.

# EXHIBIT "A"

# DIRECTV EQUIPMENT LEASE ADDENDUM



☑ Check here if you are a new DIRECTV customer

☐ Check here if you are a current DIRECTV customer obtaining one or more additional DIRECTV receiver(s)

☐ Check here if this is a Service Call. Note: Lease Addendum is not applicable for Service Calls.



**DIRECTV**

## INSTALLATION/SERVICE SATISFACTION CHECKLIST

Welcome to DIRECTV. We want to ensure you receive your service and installation expectations. Please take a moment to examine the list below and place your initials in the space provided to indicate that each item has been fulfilled. If you find an item in the DIRECTV System Education Checklist that has not been explained, please prompt the installer to provide a thorough explanation. Enter "N/A" (not applicable) for any item that are not relevant to your installation/service call.

Please check one:    Installation ____    Service Call ____    Upgrade ____

To be completed by technician:  Job #: ____    Tech ID #: ____

### DIRECTV Installation/Service Checklist

The installer who completed my installation/service call:

____ Called to confirm my appointment the day before the scheduled installation/service call
____ Called the day of the installation/service call to advise he was en route to my home
____ Was on time (arrived within scheduled appointment window)
____ Had proper identification and uniform
____ Performed a survey with me, indicating where the satellite dish would be positioned
____ Explained any additional installation charges before starting work
____ Explained my additional installation/service call charges before starting work
____ Called a DIRECTV representative and confirmed that programming was active
____ Explained the importance of the telephone hook-up and that I must maintain a working telephone line connected to all my DIRECTV System receivers
____ Ensured installation or service was clean and orderly upon completion of work
____ Reviewed all problems related to service call issues
____ Left a copy of the owner's manual and/or Welcome Kit and explained where it errors
____ Contacted I find walk-through showing where all devices/equipment are located

### DIRECTV System Education Checklist

The installer thoroughly explained how to operate my DIRECTV System and remote control including how to:

____ Access and locate Customer Education channels and local channels
____ Turn on DIRECTV System, television or equipment devices on and off using the remote control
____ Change channels and how the volume up and down on the DIRECTV System and the remote control
____ Set up parental controls (Locks and Limits) and favorite channels lists
____ Access and navigate the on-screen programming guide and how to check on-screen signal strength
____ Purchase Pay Per View programming with the remote control
____ Switch between my DIRECTV programming and off-air antennable channels (if applicable)
____ Record DIRECTV programming with my VCR and record and use the DVR features (if applicable)
____ Reset the DIRECTV receiver
____ Use the input settings for all devices now connected to the TV
____ Compare the picture quality and settings for SD and HD channels (if HD installed)
____ Navigate and an instruction features (if applicable)

Were you completely satisfied with your installation/service call (Please initial one)?  YES ____  NO ____

Thank you for taking the time to complete this checklist. This information is essential for DIRECTV to monitor our customers' installation/service call experience and enables us to continually improve the quality of

# EXHIBIT "B"



# DIRECTV.

# CUSTOMER AGREEMENT

Effective as of April 24, 2007; until replaced

**THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV® SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9). IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE. IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING. TO VIEW A SPANISH VERSION OF THIS AGREEMENT, PLEASE VISIT DIRECTV.COM/ACUERDO OR CALL 1-800-531-5000. PARA VER UNA VERSION EN ESPAÑOL DE ESTE CONTRATO, POR FAVOR VISITE DIRECTV.COM/ACUERDO O LLAME AL 1-866-288-6727 PARA SOLICITAR ESTE DOCUMENTO.)**

You may contact us 24 hours a day, any day of the year by sending us an e-mail at directv.com/email or by writing to:

CONTACTING DIRECTV:

DIRECTV, Inc.
Customer Service
P.O. Box 6550
Greenwood Village, CO 80155-6550

You can also call us at 1-800-531-5000 and speak your request into our Automated Phone System. As, for technical issues – say "technical," for on-screen messages – say the extension or message you see on your TV screen; to pay your bill – say "pay my bill", for programming questions – say the name of the package or service, etc.

If you call for DIRECTV Service comes from a party other than DIRECTV, please use the contact information provided on your bill for any questions about your DIRECTV Service.

Thank you for choosing DIRECTV. DIRECTV provides digital satellite entertainment programming and services (referred to collectively as "Service") to residents of the United States. We do not provide Service to addresses outside of the United States.

## CUSTOMER AGREEMENT

### 1. OUR SERVICE

These are the terms on which we will provide you Service.

(a) **Program Choices.** You must subscribe to a package in order to receive additional Services such as premium movie services or sports subscriptions. All programming selections have their own rates, terms and conditions. Information about programming is available at directv.com.

(b) **Ordering Pay Per View.** You may order Pay Per View Services by using your on-screen guide and remote control, by ordering at directv.com, by calling us and speaking through our Automated Phone System, or by ordering through an agent. If you call an agent to order, a service fee may apply (described in section 2). A reduced fee is available for Pay Per View orders placed at directv.com or through our Automated Phone System. To use your remote control to order, your receiver must be continuously

connected to a land-based telephone line. Your order is transmitted via the computer jurisdiction, under the rules and regulations of the Federal able to use the line for other purposes. Repeated cancellation of previously ordered Pay Per View Services may result in cancellation of your account. restrictions on your ability to order Pay Per View Services, or imposition of additional fees for Pay Per View Services.

(c) **Your Programming Changes.** You may change your programming selection by notifying us. A fee may apply to such changes (described in Sections 2 & 5(i)). Some programming may be purchased in minimum blocks of one month or multiples of one month.

(d) **Our Programming Changes.** Many changing considerations affect the availability, cost and quality of programming and customer demand for it. Accordingly, we reserve the unrestricted right to change, rearrange, add or delete our programming packages, the selections in those packages, our prices, and any other Service we offer, at any time. We will endeavor to notify you of any change that is within our reasonable control and is effective date. In most cases, this notice will be about one month in advance. You always have the right to cancel your Service, in whole or in part, if you do not accept the change (see Section 5). If you cancel your Service, a deactivation fee (described in Section 2 & 5(i)) or other charges may apply. Credits, if any, to your account will be posted as described in Section 5. If you are not cancel, your continued receipt of our Service will constitute acceptance.

(e) **Access Card.** You have received a conditional access card (referred to as the "Access Card") and a License Agreement governing your use of the Access Card while you are receiving our Service. Access Cards are nontransferable and are the exclusive property of DIRECTV. If you fail to return the Access Card to us, if lost, damaged, defective or stolen, you may be charged a fee. If the Access Card has not been activated or tampering with or unauthorized or improper or illegal use of your account or with or modification of the Access Card and your account is in good standing. A replacement fee may apply (described in Section 2). Tampering with or other unauthorized modification of the Access Card is strictly prohibited and may result in criminal or civil action. Tampering with or inserting any device into your receiver other than an authorized unmodified Access Card is prohibited. DIRECTV reserves the right to cancel or replace your Access Card. Upon request, the card must be returned to DIRECTV. If you do not return the Access Card to DIRECTV when you cancel your Service, you may be charged a fee as described in Section 2. Requesting or ordering an Access Card on behalf of other persons or for purposes other than lawful receipt of DIRECTV Service is prohibited.

(f) **Phone Connections.** For optimal performance of your Receiving Equipment, including ordering with your remote control of receiving certain Services, each of your receivers must be directly connected to the same land-based telephone line. If you add a new Service, or purchase a regular subscription for each additional TV, or if all your receivers are not continuously connected to the same land-based telephone line, we can charge you, for each TV, the additional receiver fee (described in Section 2. You agree to provide true and accurate information about the location of your receivers. If we detect that any receiver has been moved to a location other than the one at the location identified in Section 2, we may disconnect that receiver is not at the location investigate and, if it is determined that the receiver is not at the location identified in Section 2, we may disconnect the receiver or charge you the full programming subscription price for the receiver.

(g) **Mobile Units.** We provide Service to Receiving Equipment installed in mobile units such as campers, boats and other recreational vehicles. However, this Receiving Equipment is not eligible for multiple TV authorization discount described in 1(f).

(h) **Private Viewing.** We provide Service for your private non-commercial use, enjoyment and home viewing. The programming may not be rebroadcast, transmitted or performed, nor may admission be charged for its viewing or listening. You may not use any of our programming for commercial purposes or establish viewing accounts on behalf of, transmit or distribute running accounts of it. You may not use any of our programming for commercial purposes or admission for its viewing or transmit or distribute running accounts of it. Notwithstanding the provisions of Section 9, we or any programming provider may prosecute violations

of the foregoing against us and other responsible parties in any court of competent jurisdiction, under the rules and regulations of the Federal Communications Commission and other applicable laws.

(i) **Blackouts.** Certain programming, including sports events, may be blacked out in your local viewing area. Blackouts and other restrictions on sports leagues and other entities that own the local broadcast rights. For leased Receiving Equipment, non-return fees as specified in the Equipment Lease Addendum will apply.

(k) **Your Viewing Restrictions.** It is your responsibility to impose any viewing restrictions on other family members or guests, as you think appropriate. We are not responsible to you or anyone else based on the content of our programming or viewing restrictions you impose via parental controls, locks and limits and password protection on your account.

(l) **Change of Receiving Equipment.** We consider you to be responsible for the programming on your account and the recipient of programming on, any Receiving Equipment you own, and the recipient of programming on, any Receiving Equipment you own, by others until you notify us of a transfer. Lessee Receiving Equipment may not be transferred.

(k) **Loss of Receiving Equipment.** You should notify us immediately if your receiver, remote control or receiving antenna dish (referred to collectively as "Receiving Equipment") is lost or stolen. If you notify us within 5 days, we will not charge you for unauthorized use occurring after your notice. For lease Receiving Equipment, non-return fees as specified in the Equipment Lease Addendum will apply.

(l) **Transfer of Receiving Equipment.** We consider you to be responsible for the programming on your account and the recipient of programming on, any Receiving Equipment you own, by others until you notify us of a transfer. Lessee Receiving Equipment may not be transferred.

(m) **Change of Address.** You must notify us immediately of any change in your name, mailing address, residence address or telephone number.

### 2. PAYMENT

In return for receiving our Service, you promise to pay us as follows:

(a) **Programming.** You will pay in advance, at our rates in effect at the time, for all Service ordered by you or anyone who uses your Receiving Equipment, with or without your authorization until the Service is canceled. The amount you owe us for Service will appear on your account. In our discretion, we will require you to pay for Service in advance. At our discretion, we may accept partial payments, which will be applied to my account. No statement. No "payment in full" notation or other restrictive endorsement written on or with any payment will restrict our ability to collect all amounts owing to us. We may reduce your service to a minimum service level, at our rates in effect at the time, or deactivate your Service if you do not pay your statements on time, after any applicable grace period.

(b) **Taxes.** You will pay all taxes or other governmental fees and charges, if any, which are assessed.

(c) **Administrative Fees.** In order to control the basic charges, which apply to all customers, we charge fees that arise in specific circumstances only and assess those responsible for them. This list is not exclusive, and DIRECTV reserves the right to modify them. There may be additional fees. Accordingly, you will pay the following fees when they are applicable:

(1) **Account Activation Fee.** We may charge you a fee of (i) up to $10.00; or of (ii) the maximum amount permitted under applicable law prior to or upon activation of your Service account.

(2) **Access Card Replacement Fee.** If you do not return the Access Card when requested to do so, or if we have to replace the Access Card, we may charge you a replacement fee of up to $300.00. If you return the old Access Card to us, you may receive partial credit for your account, if you request overnight delivery of an Access Card replacement for your account, you must pay a shipping and handling fee of up to $19.95.

(3) **Service Reconnect/Authorization Fee.** If you meet the qualifications described below, you may be charged a reconnect fee of up to $99.00 fee for Service on each additional TV. This reduced rate is available only if all receivers are located at your residence.

(4) *Administrative Late Fee.* If we do not receive your payment by the due date on your bill, we may charge you an administrative amount permitted under (i) of $5.00, or (ii) the maximum amount permitted under and subject to applicable law. This late fee is not an interest charge, finance charge, time price differential or other such charge or payment of a similar nature. You acknowledge that this fee is reasonably related to the actual expense we incur to bill for a late payment and to any limitations imposed by law in your state.

(5) *Change of Service Fee.* If you change your Service package to a lower-priced package, we may charge you a fee the lesser of (i) up to $10.00, or (ii) the maximum amount permitted by applicable law.

(6) *Phone Payment Fee.* If you elect to pay any outstanding balance over the telephone with an agent, we may charge you the lesser of (i) up to $5.00, or (ii) the maximum amount permitted by applicable law. To avoid this fee, you can pay your bill through our Automated Phone System by saying "Pay my bill," or (ii) at directv.com.

(7) *Deposits.* We may require that you provide a deposit prior to or after activation of your Service, which we may apply against any unpaid amounts at any time. Deposits will appear on your bills as credits, from which we will deduct our charges. Deposits will not bear interest, except as required by applicable law.

(8) *Order Assistance Fee.* If you order a Pay Per View Service by calling and speaking with an agent, we may charge you a fee of up to $5.00, or up to $1.50 if you order via our Automated Phone System, for each separate movie, event or other program so ordered. There is no order assistance fee for orders placed at directv.com.

(9) *Deactivation Fee.* If you cancel your Service or we deactivate your Service account by reason of your failure to pay or for some other reason on your part, we may charge you a fee the lesser of (i) up to $15.00, or (ii) the maximum amount permitted by applicable law.

(10) *Duplicate Statement Fee.* If you request a duplicate statement, we may charge you a fee the lesser of (i) up to $1.75, or (ii) the maximum amount permitted by applicable law for each statement copy.

(11) *Ledger Request Fee.* If you request a payment ledger itemizing past payments on your account, we may charge you a fee the lesser of (i) up to $2.75, or (ii) the maximum amount permitted by applicable law.

(12) *Returned Payment Fee.* If any bank or other financial institution refuses to honor any payment, draft or instrument submitted for payment due to insufficient funds in your account, we may charge you a fee the lesser of (i) up to $25.00, or (ii) the maximum amount permitted by applicable law. You acknowledge that this fee is not an interest charge, finance charge, time price differential or other such charge or payment of a similar nature and it is reasonably related to the actual expense we incur due to unsatisfied payment.

*Billing Statements.* We will send you a statement for each billing cycle (usually once every 30 days) unless you have a zero or nominal balance due, or a nominal credit balance, on your account at the end of a billing cycle. Statements will show (1) payments, credits, purchases and any other charges that will appear on your account; (2) the amount you owe us and (3) the payment due date. If you elect to make automatic credit or debit card payments, you will not receive monthly statements unless you request that they be sent.

*Questions About Your Statement.* If you think your statement is incorrect or due, or if you need more information about it, contact us immediately. We will try to resolve any complaints you have as promptly as we can.

**Unapplied portions of the statement must be paid by the due date to avoid a late fee and possible reduction or deactivation**

of Service.

Remember, if your bill for DIRECTV Service comes from a party other than DIRECTV, please see the contact information on your bill.

(b) *Consents Regarding Credit.* In order to process your account with us, (i) by checking with credit reporting agencies, (subject to Section 9) by checking with credit reporting agencies. If you are delinquent in any payment to us, you also authorize us to report any late payment or nonpayment to credit reporting agencies. Due to the subjective nature of creditworthiness, we reserve the right to require prepayment for any Service via cashier's check, money order or credit card, notwithstanding your credit rating, past history or practice.

(c) *Our Cancellation.* We may cancel your Service at any time if you fail to pay amounts owing to us when due, subject to any grace periods or any other material provision of this Agreement, or act abusively toward our staff. In such case, you will still be responsible for payment of all outstanding balances accrued through that effective date, including the deactivation fee described in Section 2. In the event, we may cancel your Service if you elect not to accept any changed terms described to you, as provided in Section 4.

## 3. CUSTOMER INFORMATION

(a) *Representations.* You represent that you are at least 18 years of age and a resident of the United States.

(b) *Contact Information.* You agree to provide true, accurate, current and complete contact information about yourself, and maintain and promptly update your contact information to keep it true, accurate and complete.

(c) *Online Access.* You are responsible for maintaining the confidentiality of the password and your account username used for online billing and account management. You agree to (i) immediately notify DIRECTV of any unauthorized use of your password and account, (ii) keep your username and password confidential and not share them with anyone else, and (iii) ensure that you exit from your account at the end of each session. You will be responsible for any and all activities that occur under your account. You may also use the Service in accordance with Section 5. If you elect not to cancel your Service after receiving a new Customer Agreement, your continued receipt of Service from us will constitute acceptance of the changed terms and conditions. If you notify us that you do not accept such terms and conditions, then we may cancel your Service as provided in Section 5, and we cannot offer Service to different customers on different terms, among other reasons.

## 4. CHANGES IN CONTRACT TERMS

We reserve the right to change the terms and conditions on which we offer your Service. If we make any such changes, we will send you a copy of your new Customer Agreement containing its effective date. You always have the right to cancel your Service, in whole or in part at any time, and you may do so if you do not accept any such change in terms or conditions. You will be issued a credit, if any, in accordance with Section 5. If you elect not to cancel your Service after receiving a new Customer Agreement, your continued receipt of Service from us will constitute acceptance of the changed terms and conditions. If you notify us that you do not accept such terms and conditions, then we may cancel your Service as provided in Section 5, and we cannot offer Service to different customers on different terms, among other reasons.

## 5. CANCELLATION

(a) *Term.* The term of this Agreement is indefinite and Service will continue until cancelled as provided herein. UNLESS YOU NOTIFY US THAT YOU WISH TO CANCEL IT, WE WILL AUTOMATICALLY RENEW SERVICE THAT YOU SUBSCRIBE TO ON A PERIODIC BASIS, INCLUDING ANY MONTHLY OR ANNUAL SUBSCRIPTIONS AND SEASONAL SPORTS SUBSCRIPTIONS, AS LONG AS WE CONTINUE TO CARRY THE SERVICE.

(b) *Your Cancellation.* You may cancel your Service by notifying us. You may be charged a deactivation fee as described in Section 2 and issued a credit as described below. Your notice is effective on the day we receive it. You will be responsible for payment of all outstanding balances accrued through that effective date. In addition to any deactivation or change of service fees provided in Section 2, if you cancel Service or change your Service package, you may be subject to an early cancellation fee if you entered into a separate programming commitment with DIRECTV in connection with obtaining Receiving Equipment, and have failed to maintain the required programming package for the required period of time.

For Services sold only in blocks of one month, or multiples of one month, if you cancel such Service, we will credit you for the full months not used. For example, if you subscribe for a year of such Service from January through December but cancel on March 10, we will credit you for the subscription fees for April through December. However, we will not credit for seasonal sports subscriptions after the season starts.

(d) *Credit Balances.* If you have a credit balance after the close of your account and issuance of the final bill, we will automatically issue you a refund, if your credit balance results from your receipt of a refund, and we have obtained your account information, then your refund unless you make a written request for the refund. If you do not make such a written request for the refund within one year of the close of your account, you forfeit any credit balance remaining on your account and your balance will be reset to zero.

(e) *Payment Upon Cancellation.* You acknowledge that you have provided your credit or debit card account information to us. You understand that any refund fees and charges as a result of your receipt and use of Service will be charged to your credit or debit card, and may incur such charges until and/or after Receiving Equipment, and may incur such charges until and/or after the cancellation of Service and/or programming. You acknowledge and agree to apply for refunds, fees and/or credits and/or debit card account information. By giving us your credit or debit card account information, you authorize us to apply this method of payment, in accordance with applicable law, to satisfy any and all amounts due upon cancellation. You further acknowledge that you are required to maintain current credit or debit card information with us until any and all amounts owing under this Agreement, such as a change in the card number or the expiration date.

## 6. PERSONAL DATA

We collect Personally Identifiable Information about our customers ("Personal Data"), to the extent not inconsistent with the Privacy Policy, for its use, that is, available to customers with DVR-enabled Receiving Equipment. DIRECTV DVR Receivers require the ability to use and record televised programs ("Third Party Content"). You understand that DIRECTV does not guarantee the access to or recording of any particular program, or the length of time any particular recorded program may remain available for your viewing. You also understand that Third Party Content is the copyrighted material of the third party that supplies it, protected by copyright and other applicable laws, and may not be reproduced, published, broadcast, rewritten or redistributed without the written permission of the third party that supplied it, except to the extent allowed under the "fair use" provisions of the U.S. copyright laws or comparable provisions of foreign laws. You agree that DIRECTV will have no liability to you, or anyone else whom you permit to use DIRECTV DVR Service, with respect to any Third Party Content. DIRECTV DVR Service, from time to time may change, add or remove features of the DIRECTV DVR Service, or change the service fee for DIRECTV DVR Service.

## 7. DIRECTV DVR SERVICE

DIRECTV DVR Service is a separately sold service, at our rates in effect at the time, available to customers with DVR-enabled Receiving Equipment. DIRECTV DVR Receivers require the ability to use and record televised programs ("Third Party Content"). You understand that DIRECTV does not guarantee the access to or recording of any particular program, or the length of time any particular recorded program may remain available for your viewing. You also understand that Third Party Content is the copyrighted material of the third party that supplies it, protected by copyright and other applicable laws, and may not be reproduced, published, broadcast, rewritten or redistributed without the written permission of the third party that supplied it, except to the extent allowed under the "fair use" provisions of the U.S. copyright laws or comparable provisions of foreign laws. You agree that DIRECTV will have no liability to you, or anyone else whom you permit to use DIRECTV DVR Service, with respect to any Third Party Content. DIRECTV DVR Service, from time to time may change, add or remove features of the DIRECTV DVR Service, or change the service fee for DIRECTV DVR Service.

We generally use local telephone calls to provide the DIRECTV DVR Service. You are responsible for such telephone charges and acknowledge and agree that you shall be solely responsible for all disputes with any telephone company related to the same.

If you paid a "lifetime service fee," you will not be charged a fee for your

DIRECTV DVR Service as long as you maintain television programming service from DIRECTV on the same account. If you disconnect your television programming service or your DIRECTV DVR Service, your DIRECTV DVR Service will no longer be provided. If you later resubscribe to DIRECTV programming service, your DIRECTV DVR Service will be reconnected and you will not be charged a fee for DIRECTV DVR Service.

By receiving the DIRECTV DVR Service, you agree to the following license. The term "Software" shall include any updates, modified versions, additions and copies of certain software for the DIRECTV DVR Service (in whole or in part) provided that may be provided by DIRECTV from time to time. The term "End User Documentation" shall mean the user documentation and related voluntary written materials provided to you in connection with the Software. The term "Software" does not include the Receiving Equipment.

(a) **License Grant.** You may use the Software solely in executable code form and solely in connection with your Receiving Equipment. DIRECTV grants to you a non-exclusive license to use the Software, provided that you agree to the following:

(b) **Restrictions.** You may not copy, modify, transfer, disseminate or publish the Software, or any copy thereof, in whole or in part. You may not reverse engineer, disassemble, decompile or translate the Software or otherwise attempt to derive the source code of the Software, except to the extent allowed under any applicable law. Any attempt to transfer any of the rights, duties or obligations of this license agreement is void. You may not rent, lease, load, resell for profit or distribute the Software, or any part thereof.

(c) **Ownership.** The Software is licensed, not sold, to you solely for your use, subject to and under this license grant, and DIRECTV (or its suppliers, if any, on which Software or End User Documentation is recorded, but DIRECTV and its suppliers retain ownership of all copies of the Software itself.

(d) **Reservation of Rights.** Except as stated above, this license agreement does not grant to you any intellectual property rights in the Software.

(e) **Term.** If you breach any term or condition of this license agreement, this license agreement will terminate immediately upon notice to you.

(f) **WARRANTY DISCLAIMER; NEITHER DIRECTV NOR ANY OF ITS REPRESENTATIVES MAKES OR PASSES ON TO YOU OR OTHER THIRD PARTIES ANY WARRANTY OR REPRESENTATION ON BEHALF OF DIRECTV OR ITS SUPPLIERS (INCLUDING TIVO) WITH RESPECT TO THE SOFTWARE, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, TITLE OR NON-INFRINGEMENT OF THIRD PARTY RIGHTS.**

(g) **Limitation of Liability.** IN NO EVENT WILL DIRECTV OR ITS SUPPLIERS BE LIABLE TO YOU WITH RESPECT TO THE SOFTWARE FOR ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES, INCLUDING LOST PROFITS OR LOST SAVINGS, EVEN IF DIRECTV OR ITS SUPPLIERS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM BY ANY THIRD PARTY. Some states or jurisdictions do not allow the exclusion or limitation of incidental, consequential or special damages, so the above limitations may not apply to you.

(h) **Third-Party Beneficiary.** DIRECTV and you expressly acknowledge and agree that TiVo, Inc., a Delaware corporation with its principal place of business at 2160 Gold Street, Alviso, CA 95002, is an intended third-party beneficiary of this license agreement as it relates to TiVo software that may be contained in the Receiving Equipment. These license provisions are made expressly for the benefit of TiVo and are enforceable by TiVo in addition to DIRECTV.

**9. LIMITS ON OUR RESPONSIBILITY.**

(a) **Service Interruptions.** Service may be interrupted from time to time for a variety of reasons. We are not responsible for any interruptions of Service that occur due to acts of God, power failure or other causes beyond our reasonable control. However, because we value your business, if an interruption of Service lasts longer than a significant length of time that is within our reasonable control, upon your request we will provide what we reasonably determine

---

to be a fair and equitable adjustment to your account to make up for such Service interruption. THIS WILL BE YOUR SOLE REMEDY AND OUR SOLE DUTY IN SUCH CASES.

(b) **Disclaimers.** EXCEPT AS EXPRESSLY PROVIDED HEREIN, WE MAKE NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, REGARDING ANY SERVICE OR YOUR RECEIVING EQUIPMENT. ALL SUCH WARRANTIES OR REPRESENTATIONS (INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT) ARE DISCLAIMED.

(c) **Limitation of Liability.** WE ARE NOT RESPONSIBLE FOR ANY CONSEQUENTIAL DAMAGES OR LOSSES RELATING TO THE RECEIVING EQUIPMENT OR ANY SERVICE, WHETHER BASED ON NEGLIGENCE OR OTHERWISE. REGARDLESS OF THE CAUSE, OUR TOTAL LIABILITY FOR DAMAGES OR LOSSES TO YOU AND ANY OTHER PERSONS SHALL NOT IN ANY EVENT EXCEED THE AMOUNT THAT YOU HAVE PAID TO US FOR THE SERVICE THAT YOU RECEIVED DURING THE SIX (6) MONTH PERIOD IMMEDIATELY PRIOR TO THE SPECIFIC EVENT THAT GAVE RISE TO THE APPLICABLE DAMAGE OR LOSS. THIS ALLOCATION OF RISK IS REFLECTED IN OUR PRICES. YOU MAY HAVE GREATER RIGHTS THAN DESCRIBED ABOVE UNDER YOUR STATE'S LAWS. YOU should consult them.

(d) **Warranty Services.** You agree that these equipment does not provide for, and the Service does not include, any warranty services or other services that we might provide separately, including, without limitation, any fee-based or other warranty programs.

**10. RESOLVING DISPUTES**

In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:

(a) **Informal Resolution.** We will first try to resolve any Claim informally. Accordingly, neither of us may start a formal proceeding (except for Claims described in Section 9(d) below) for at least 60 days after one of us notifies the other of a Claim in writing. You will send your notice to the address on the first page of this Agreement, and we will send our notice to your billing address.

(b) **Formal Resolution.** Except as provided in Section 9(d), if we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration. The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated (referred to as the "JAMS Rules") and under the rules set forth in this Agreement. If there is a conflict between JAMS Rules and the rules set forth in this Agreement, the rules set forth in this Agreement will govern. ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL. You may, in arbitration, seek any and all remedies otherwise available to you pursuant to your state's law. If you decide to initiate arbitration, you agree to pay us an arbitration proceeding. Other fees, such as attorney's fees and expenses of travel to the arbitration will be paid in accordance with your hometown area unless you only need to pay an additional initiation fee equal to such court filing fee, not to exceed $125; we agree to pay any additional fee or deposit required by JAMS to initiate your arbitration. We also agree to pay the costs of the arbitration proceeding. Other fees, such as attorney's fees and expenses of travel to the arbitration will be paid in accordance with JAMS Rules. The arbitration will be held in a location in your hometown area unless you and we both agree to another location or telephone arbitration. To start an arbitration, you or we must do the following things:

(1) Write a Demand for Arbitration. The demand must include a description of the Claim and the amount of damages sought to be recovered. You can find a copy of a Demand for Arbitration at jamsadr.com.

(2) Send three copies of the Demand for Arbitration, plus the appropriate filing fee to:

JAMS<br>
500 North State College Blvd., Suite 600<br>
Orange, CA 92868<br>
1-800-352-5267

(3) Send one copy of the demand for arbitration to the other party.

(c) **Special Rules.** (i) In the arbitration proceeding, the arbitrator has no authority to make errors of law, and any award may be challenged if the arbitrator does so. Otherwise, the arbitrator's decision is final and binding on all parties and may be enforced in any federal or state court that has jurisdiction. (ii) Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity. Accordingly, you and we agree that the JAMS Class Action Procedures do not apply to our arbitration. If, however, the law of your state would find this agreement to dispense with class action arbitration procedures unenforceable, then this entire Section 9 is unenforceable.

(d) **Exceptions.** Notwithstanding the foregoing, (i) any Claim based on Section 11 above, and (ii) any dispute involving a violation of the Communications Act of 1934, 47 U.S.C. § 605, regulations of the Federal Communications Commission, or the laws of the state and local area where Service is provided that is set forth to satellite to your receiver or delivered when a voice message is left at the telephone number on your account. Your notices to us will be deemed given when we receive them at the address or telephone number on the first page of this Agreement.

**11. MISCELLANEOUS**

(a) **Notice.** Notices to you will be deemed given when personally delivered, or sent by any of your last known address and deposited in the U.S. Mail (which may include inclusion in your billing statement), or sent via Internet to the e-mail address you provided us or sent via satellite to your receiver or delivered when a voice message is left at the telephone number on your account. Your notices to us will be deemed given when we receive them at the address or telephone number on the first page of this Agreement.

(b) **Applicable Law.** The interpretation and enforcement of this Agreement shall be governed by the rules and regulations of the Federal Communications Commission, other applicable federal laws, and the laws of the state and local area where Service is provided. This Agreement is subject to modification if required by such laws. Notwithstanding the foregoing, Section 9 shall be governed by the Federal Arbitration Act.

(c) **Assignment of Account.** We may assign your account or this Agreement and all rights and/or obligations hereunder to any third party without notice to you. You may not assign, including, without limitation, collection of unpaid amounts, or in the event of an acquisition, corporate reorganization, merger or sale of substantially all of our assets to another entity. You agree to any assignment to such assignee. You must continue making all required payments to us in accordance with your billing statement, unless notified otherwise.

(d) **Other.** This Agreement and any lease, activation, programming, or other service commitment agreement that you entered into in connection with obtaining Receiving Equipment constitute our entire agreement with you. No salesperson or other representative is authorized to change it. If any provision is declared to be invalid or unenforceable, the terms of this Agreement will be deleted or modified to the extent necessary, and the rest of this Agreement will remain enforceable. The terms of this Agreement that expressly or by their nature survive termination shall continue thereafter until fully performed.

**THANK YOU.**

©2007 DIRECTV, Inc. DIRECTV and the Cyclone Design logo are registered trademarks of DIRECTV, Inc. 00207200SA08264

✎JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SANDRA JOHANNES and IRA BOSHNACKm et al | DIRECTV, INC |

**(b)** County of Residence of First Listed Plaintiff **Broward**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Los Angeles County, CA**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Scott Wm Weinstein, Esq.
Morgan & Morgan, P.A.
P. O. Box 9405, Ft. Myers, FL
(239) 433-6880

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☑ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

O:09 CV 00464-Moreno

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☐ YES ☐ NO

JUDGE                    DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. Section 1332; assessment of unlawful cancellation penalties and exacting penalties without authority from Plaintiffs' bank accounts.

LENGTH OF TRIAL via _10_ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 5,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
_Scott W_

DATE
March 26, 2009

FOR OFFICE USE ONLY
AMOUNT 350    RECEIPT # 545843    IFP