**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

CASE NO.: 09-CIV-60464-MORENO/TORRES

SANDRA JOHANNES and IRA BOSHNACK,
on behalf of themselves and all others similarly
situated,

        Plaintiffs,

vs.

DIRECTV, INC., a California Corporation,

        Defendant.

_____/

**DEFENDANT DIRECTV, INC.'S MOTION TO DISMISS OR STAY PROCEEDINGS**
**PENDING ARBITRATION AND TO COMPEL ARBITRATION,**
**OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' CLAIMS FOR**
**UNJUST ENRICHMENT AND ASSUMPSIT PURSUANT TO RULE 12(b)(6)**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant DIRECTV, Inc. hereby moves for an order dismissing or staying these proceedings pending arbitration and compelling arbitration, or, in the alternative, dismissing Plaintiffs' claims for unjust enrichment and assumpsit or money had and received for failure to state a claim on which relief may be granted. DIRECTV brings this motion pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, and alternatively, pursuant to Federal Rule of Civil Procedure 12(b)(6). The points and authorities in support of this motion are set forth below.

## I.      INTRODUCTION

Plaintiffs Sandra Johannes ("Johannes") and Ira Boshnack ("Boshnack") bring this lawsuit, on behalf of a putative class of Florida consumers, to challenge the fees DIRECTV assesses when its customers choose not to fulfill their agreements to purchase programming for a certain period of time. But Plaintiffs cannot proceed in this Court because they have contractually agreed to resolve all disputes with DIRECTV through binding, individual arbitration.

Plaintiffs seek to avoid their agreement to arbitrate by claiming that the arbitration agreement is unconscionable, and thus unenforceable. However, the parties' arbitration agreement exhibits neither procedural nor substantive unconscionability, both of which are required to establish unconscionability under Florida law. To the contrary, Plaintiffs each had the opportunity to review the arbitration agreement, and both chose to continue receiving DIRECTV service instead of canceling their service and selecting another programming provider. The terms of the arbitration agreement mutually bind the parties and are designed to make arbitration convenient and affordable for DIRECTV's customers. Moreover, arbitration agreements that require parties to arbitrate on an individual basis are enforceable in Florida where, like here, plaintiffs can effectively vindicate their substantive rights in arbitration.

1

Accordingly, this Court should compel arbitration of Plaintiffs' claims in accordance with the parties' agreement and dismiss or stay this action under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*. (the "FAA").

Alternatively, if the Court declines to compel arbitration, Plaintiffs' unjust enrichment and assumpsit/money had and received claims should be dismissed for failure to state claims on which relief may be granted.  Plaintiffs do not allege that they have no adequate remedy at law, and therefore may not proceed with these equitable causes of action.  Moreover, Boshnack has not alleged that DIRECTV has retained money belonging to him, an essential element of both causes of action.

## II.   BACKGROUND

To obtain digital television services from DIRECTV, a potential subscriber first acquires, typically from DIRECTV or an equipment dealer, the equipment necessary to receive DIRECTV's satellite signal.  *See* Declaration of Valerie McCarthy ("McCarthy Decl."), attached as Ex. A, ¶ 2.  The potential customer then becomes a subscriber by electing to receive one or more of DIRECTV's programming packages and services.  *Id.*  After the equipment is installed, DIRECTV activates the subscriber's services, and the customer begins to receive programming. *Id.*

The relationship between DIRECTV and each customer is governed by a written contract (the "Customer Agreement") that is mailed to each customer along with his or her first billing statement, and that is also made available on DIRECTV's website.  *Id.* ¶ 3.  The Customer Agreement sets forth the parties' rights and obligations and explains the terms and conditions of subscribing to DIRECTV services.  *Id.*

### A.     Johannes' Relationship With DIRECTV

On June 30, 2008, Johannes took advantage of a special offer for new DIRECTV customers, through which she obtained a DIRECTV system, including four DIRECTV receivers, a satellite dish, and all the other equipment necessary for her to receive DIRECTV service, plus professional installation, handling and delivery of the equipment, all at no cost to her.  *Id.* ¶ 5.  At that time, the Customer Agreement was available on DIRECTV's website, www.directv.com. *Id.* ¶ 3.  DIRECTV sent Johannes a letter confirming her order the same day, June 30, 2008.  *Id.* ¶ 5; Ex. 2 (Johannes Confirmation Letter).  The order confirmation letter described Johannes' order, confirmed the programming commitment associated with her order and the fee that could be assessed if she chose not to fulfill that commitment, and informed Johannes of the requirement that any disputes between her and DIRECTV be resolved in arbitration, as set forth fully in the forthcoming Customer Agreement.  *Id.* ¶ 5; Ex. 2.  Johannes did not object to the terms communicated in the confirmation letter, and activated her DIRECTV service four days later on July 4, 2008.  *Id.* ¶ 5.

DIRECTV mailed Johannes her first billing statement on or about July 5, 2008, and included with her first statement a copy of the DIRECTV Customer Agreement then in effect. *Id.* ¶ 6; Ex. 1 (2007 Customer Agreement).  The first paragraph of Johannes' Customer Agreement specified in bold, capitalized print that Johannes would accept its terms by continuing to receive, and not canceling, DIRECTV's services:

> **THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV® SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9).  IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE.  IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING.**

3

*Id.*, Ex. 1, Introduction (emphasis in original).  Johannes' Customer Agreement with DIRECTV contained the arbitration provision referenced in the order confirmation letter, requiring her to arbitrate "any legal or equitable claim relating to this Agreement, any addendum, or your Service" (*id.*, Ex. 1 § 9), and to arbitrate on an individual basis.  *Id.*, Ex. 1 § 9(c)(ii) ("Neither you nor we shall be entitled to join or consolidate claims . . . as a representative member of a class.").  The Customer Agreement further provided that the arbitration provision "shall be governed by the Federal Arbitration Act."  *Id.*, Ex. 1 § 10(b).  Finally, the Customer Agreement specified that the law of the state in which the customer receives service would govern the agreement.  *Id.*  After receiving the Customer Agreement, Johannes did not dispute any of its terms or conditions and did not cancel her DIRECTV services.  *Id.* ¶ 6.

Johannes continued receiving DIRECTV services until August 11, 2008, when she opted not to fulfill her programming commitment, and instead canceled her service.  *Id.*  Because she canceled her service before fulfilling her programming commitment, DIRECTV assessed a prorated early cancellation fee as explained in the June 30, 2008 order confirmation letter and as described in Section 5(b) of the Customer Agreement.  *Id.* ¶ 7.

**B.    Boshnack's Relationship With DIRECTV**

Boshnack first began subscribing to DIRECTV's services on approximately May 20, 2004.  *Id.* ¶ 8.  DIRECTV included with Boshnack's first billing statement a copy of the DIRECTV Customer Agreement then in effect.  *Id.*; Ex. 3 (2001 Customer Agreement). Boshnack's Customer Agreement with DIRECTV specified that Boshnack would accept its terms by accepting, and not canceling, DIRECTV's services (*id.*, Ex. 3, Introduction), and further provided that it could be replaced by subsequent, updated Customer Agreements, which would be accepted in the same manner (*id.*, Ex. 3 § 4).  Boshnack's Customer Agreement with DIRECTV also contained an arbitration provision.  *Id.*, Ex. 3 § 8.  After receiving the Customer

4

Agreement, Boshnack did not dispute any of its terms or conditions and did not cancel his DIRECTV services.  *Id*. ¶ 8.  Boshnack received updated Customer Agreements in October 2004 and May 2006, both of which contained arbitration provisions substantially similar to the 2001 Customer Agreement.  *Id.* ¶ 9, Exs. 4 § 9 (2004 Customer Agreement), 5 § 9 (2006 Customer Agreement).  After receiving these updated Customer Agreements, Boshnack neither disputed any of their terms or conditions, nor canceled his DIRECTV services.  *Id.* ¶ 9.

After subscribing to DIRECTV service for almost three years, on April 20, 2007, Boshnack decided to upgrade his receiving equipment and placed an order for a High Definition ("HD") receiver.  *Id.* ¶ 10.  When he activated this new equipment, Mr. Boshnack agreed to maintain a certain level of programming for twenty-four months.  *Id.*  But eight months later, on April 20, 2007 (*id.* ¶ 11), Boshnack opted to cancel his service and incur a prorated early cancellation fee as contemplated by Section 5(b) of the Customer Agreement then in effect.  *Id.*, Ex. 5 § 5(b).  Boshnack did not dispute this fee, but rather paid it, and even called a DIRECTV customer service representative on May 1, 2007 to ask if he owed any additional amount in connection with his cancellation.  *Id*. ¶ 11.

On August 6, 2007, just three months after canceling his first DIRECTV account, Boshnack activated a new DIRECTV account.  *Id.* ¶ 12.  Boshnack took advantage of a special offer for new customers, which allowed him to obtain three standard DIRECTV receivers, an advanced HD receiver, and an advanced HD-Digital Video Recorder ("DVR") receiver, plus all the other equipment necessary to receive DIRECTV service, all at no cost to him.  *Id.*  On August 6, 2007, in connection with his installation of equipment and activation of service, Boshnack signed the DIRECTV Equipment Lease Addendum, which was brought to his home by the service provider who installed the DIRECTV equipment.  *Id.*; Ex. 6.  The Lease

Addendum described the programming commitment to which Boshnack agreed in connection with his equipment offer, and the prorated fee that could apply if it was not fulfilled.  *Id.*, Ex. 6. The Lease Addendum also reminded Boshnack of the agreement to arbitrate disputes with DIRECTV, as set forth fully in the Customer Agreement.  *Id.*  Boshnack activated his DIRECTV equipment on August 6, 2007.  *Id.* ¶ 12.

DIRECTV mailed Boshnack his first billing statement on the new account on August 7, 2007, and included a copy of the Customer Agreement then in effect.  *Id.* ¶ 13; Ex. 1 (2007 Customer Agreement).  As explained above, the first page of the 2007 Customer Agreement made clear, in bold, capitalized print, how Boshnack would accept any updated terms—by continuing to receive services from DIRECTV.  *Id.*, Ex. 1, Introduction.  The 2007 Customer Agreement contained an arbitration provision substantially similar to those Boshnack had previously agreed to, requiring Boshnack to arbitrate "any legal or equitable claim relating to this Agreement, any addendum, or your Service" and to arbitrate those claims on an individual basis. *Id.*, Ex. 1 § 9(b)-(c)(ii).  The Customer Agreement also specified that Boshnack's home state's laws would govern the agreement.  *Id.*, Ex. 1 § 10(b).  After receiving the 2007 Customer Agreement in August 2007, Boshnack did not dispute its terms or conditions or cancel his DIRECTV services.  *Id.* ¶ 13.

In 2008, Boshnack upgraded his account on two separate occasions by obtaining new receiving equipment.  *Id.* ¶ 14.  On March 26, 2008, Boshnack added a second HD-DVR receiver to his service, agreeing to maintain a certain level of programming for twenty-four months.  *Id.* Next, on July 5, 2008, Boshnack added a fourth standard receiver to his service.  *Id.*  DIRECTV then mailed Mr. Boshnack an updated Customer Agreement in May 2009, along with his May 7, 2009 billing statement.  *Id.* ¶ 15; Ex. 7 (2009 Customer Agreement).  The 2009 Customer

Agreement contains the same arbitration provision as the 2007 Customer Agreement.  *See id.*,

Exs. 1 & 7 § 9(b).  After receiving this updated Customer Agreement, Mr. Boshnack did not

dispute any terms or conditions in the agreement, and did not cancel his DIRECTV services.  *Id.*

¶ 15.  Boshnack remains a DIRECTV customer to this day, with six active receivers.  *Id.*

On March 26, 2009, Johannes and Boshnack filed a putative class action complaint

against DIRECTV in this Court, disregarding their contractual agreements to arbitrate disputes

like this one.

## III.   THIS COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS IN ACCORDANCE WITH THE PARTIES' ARBITRATION AGREEMENTS.

Because the FAA reflects a strong policy favoring arbitration of disputes, arbitration

provisions governed by the FAA are to be liberally enforced.  *See Moses H. Cone Mem'l Hosp.*

*v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (stating that the FAA is "a congressional

declaration of a liberal federal policy favoring arbitration agreements").  Section 3 of the FAA

provides that, when a plaintiff sues "upon any issue referable to arbitration under an agreement

in writing for such arbitration," the court "shall" stay the action until arbitration is completed in

accordance with the terms of the parties' agreement.  *See* 9 U.S.C. § 3.  Although Section 3

refers to staying proceedings, dismissal is appropriate when none of the plaintiffs' claims

remains to be resolved and there is no reason to stay the proceedings pending the arbitration.  *See*

*Nicaragua Line Co. v. M/V "Barbel P," In Rem*, No. 02-20460-CIV, 2002 WL 31962193, at *3

(S.D. Fla. Oct. 18, 2002) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164

(5th Cir. 1992)); *see also Gilchrist v. CitiFinancial Servs., Inc.*, No. 6:06-cv-1727-Orl-31KRS,

2007 WL 177821, at *4 (M.D. Fla. Jan. 19, 2007) (noting that the Eleventh Circuit has

"frequently affirmed where the district court compelled arbitration and dismissed the underlying

case" when all of plaintiff's claims have been referred to arbitration).  Section 4 of the FAA, in

turn, empowers the Court to compel arbitration according to the parties' agreement.  *See* 9 U.S.C. § 4.

When a contract contains an arbitration clause and the dispute comes within the scope of that clause, a federal court must compel arbitration and dismiss or stay the action pending arbitration, unless the party opposing arbitration proves that the agreement is unenforceable.  *See* 9 U.S.C. §§ 2-4; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). Here, the contract between DIRECTV and Plaintiffs contains an agreement to arbitrate, and Plaintiffs' claims come within the provision's broad scope.  Because the agreement is valid and enforceable, this Court should compel arbitration and dismiss, or at a minimum stay, these proceedings pending completion of the arbitration.

> A.    **The Customer Agreement Governs The Relationship Between DIRECTV And Plaintiffs.**

DIRECTV mailed the Customer Agreement to each plaintiff along with their first bills. *See* McCarthy Decl. ¶¶ 6, 13.  Plaintiffs manifested their acceptance of the Customer Agreement and its terms, including the arbitration provision, when they decided to accept—instead of cancel—DIRECTV's services after receiving copies of the Customer Agreement.  *See, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991); *Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1320-21, n.13 (S.D. Fla. 2006) (enforcing terms of customer service agreement, including arbitration clause, where customer continued accepting services after receiving the agreement).  Accordingly, the 2007 Customer Agreement governed Johannes' relationship with DIRECTV at the time she canceled service and was assessed an early cancellation fee in 2008, and therefore governs her dispute with DIRECTV.  The 2009 Customer Agreement governs Boshnack's ongoing relationship and current dispute with DIRECTV.

**B.      The Customer Agreement Between DIRECTV And Plaintiffs Contains An Arbitration Clause.**

Johannes' and Boshnack's Customer Agreements with DIRECTV contain the same arbitration provision, which is set-off in its own separate paragraph beneath the bold-print, capital letter heading "**RESOLVING DISPUTES,**" and provides that all disputes "relating to" the Customer Agreement, any addendum, or to DIRECTV services, and not resolved informally, are subject to binding arbitration:

> In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:
>
> . . .
>
> [I]f we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration.  The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated . . . and under the rules set forth in this Agreement.

*Id.*, Exs. 1 & 7 § 9(b).  Having shown the existence of an arbitration agreement, the next inquiry is whether Plaintiffs' claims here fall within the agreement's scope.

**C.      Plaintiffs' Claims Against DIRECTV Are Covered By The Arbitration Provision.**

Given the strong policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25; *see also Nestler-Poletto Realty, Inc. v. Kassin*, 730 So. 2d 324, 325 (Fla. 4th DCA 1999) (courts indulge "every reasonable presumption" to enforce arbitration agreements, resolving all doubts about the agreement's scope in favor of arbitration).  The arbitration clause here extends to "any legal or equitable claim relating to this Agreement, any addendum, or [Plaintiffs'] service." McCarthy Decl., Exs. 1 & 7 § 9.  When parties use such expansive phrasing, "only the most

forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Plaintiffs' claims here relate to both their Customer Agreements and their DIRECTV service. First, Plaintiffs allege that DIRECTV's assessment, collection, or "imposition" of early cancellation fees violates the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and/or constitutes unjust enrichment, and money had and received. *See, e.g.*, Compl. ¶¶ 57, 61, 66. Plaintiffs also seek declaratory and injunctive relief with respect to DIRECTV's assessment of early cancellation fees. *Id.* ¶¶ 71-78. These claims "relate to" the Customer Agreement because the Agreement includes a section related to the cancellation of service, which explains that Plaintiffs can be charged an early cancellation fee. *See* McCarthy Decl., Exs. 1 & 7 § 5(b). Second, Plaintiffs' claims also "relate to" their DIRECTV service because, among other reasons, it was Johannes' cancellation of her DIRECTV programming service that triggered the assessment of the early cancellation fee, and Boshnack alleges he cannot cancel his programming service because of the early cancellation fee. Compl. ¶¶ 26, 30. Because Plaintiffs' claims "relate to" their DIRECTV programming service and their Customer Agreements, the claims fall within the scope of the parties' arbitration agreement.

### D.     The Arbitration Clause Is Binding And Enforceable Under Florida Law.

Once the arbitration proponent has established that there is a valid arbitration agreement and that the dispute comes within the agreement's scope, the arbitration provision will be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Here, the parties agreed that the law of the state in which Johannes and Boshnack received DIRECTV service would govern the Customer Agreement. *See* McCarthy Decl., Exs. 1 & 7 § 10(b) (providing that contract is governed by "applicable federal laws, and the laws of the state and local area where Service is provided to you"). Because Plaintiffs are both residents of

10

Florida, and have received their DIRECTV service in Florida (Compl. ¶¶ 1, 2), Florida law governs the enforceability of the arbitration agreement.

Plaintiffs allege that the arbitration provision contained in their Customer Agreements is unconscionable, and thus unenforceable, in part because it includes an express waiver of class action procedures in arbitration.  *See* Compl. ¶¶ 43(c), 75.  However, as explained below, Florida law enforces arbitration provisions like the one at issue here.

In Florida, only those contracts found to be "monstrously harsh" or "shocking to the conscience" will be voided for unconscionability.  *Garrett v. Janiewski*, 480 So. 2d 1324, 1326 (Fla. 4th DCA 1985).  Florida law requires proof of both procedural and substantive unconscionability before a contract will be voided.  *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284, 288 (Fla. 1st DCA 2003).  Neither Johannes nor Boshnack can meet this burden.

### 1. The agreement is not procedurally unconscionable under Florida law.

Procedural unconscionability exists when, based on all of the circumstances of the transaction, the complaining party lacked a "meaningful choice" about whether or not to enter into the agreement.  *Id.*  Factors relevant to this determination include: (1) the complainant's age, education, intelligence, and business experience, (2) the parties' relative bargaining power, (3) who drafted the contract, (4) whether the terms were explained to the complainant, (5) whether the terms were hidden in a "maze of fine print", (6) whether changes could be made to the contract, (7) whether the complainant had a reasonable opportunity to understand the contract terms, and (8) whether there were alternative sources of supply for the goods or services in question.  *See, e.g.*, *Gainesville*, 857 So. 2d at 284; *Fotomat Corp. of Fla. v. Chanda*, 464 So. 2d 626, 629 (Fla. 5th DCA 1985); *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 265 (Fla. 2d DCA 2004).

Here, there is no indication that Johannes' or Boshnack's age, education, intelligence or business experience contributed to any lack of meaningful choice in their decision to select DIRECTV as their television programming provider and accept the terms and conditions of that service. Millions of people accept customer agreements (including arbitration clauses) every day without advanced experience, representation by counsel, or other assistance. And though DIRECTV drafted the Customer Agreement, Johannes and Boshnack each had the opportunity to review its terms, both on DIRECTV's website and when they received the contracts by mail, and could have chosen to obtain satellite, cable, or other multi-channel television service from another provider, if they did not want to be bound by the terms, including the arbitration agreement. *See Orkin*, 872 So. 2d at 265 (finding no procedural unconscionability where complainant could have obtained the services contracted for from another provider if he was unsatisfied with the terms of the preprinted contract); *see also Gainesville*, 857 So. 2d at 287, and *Fotomat*, 464 So. 2d at 631 (same). Johannes and Boshnack had an opportunity to read the arbitration agreement and reject it, but instead chose to continue receiving service and accept it.

Finally, DIRECTV did not hide the arbitration provision in a "maze of fine print." *See Orkin*, 872 So. 2d at 265 (finding no procedural unconscionability where arbitration clause appeared in large type and was not "buried in a maze of fine print"). To the contrary, the Customer Agreement notified Johannes and Boshnack, in capitalized, bolded lettering in the very first paragraph, that the agreement "**IS SUBJECT TO ARBITRATION**" and cites "**SECTION 9**" for easy reference for the customer. The arbitration provision is then set off in its own section under the capitalized, bolded, stand-alone heading "**RESOLVING DISPUTES**." *See* McCarthy Decl., Exs. 1 & 7 § 9(b). And this section emphasizes in capitalized, bolded lettering, the meaning of the arbitration agreement: "**ARBITRATION MEANS THAT YOU WAIVE**

12

**YOUR RIGHT TO A JURY TRIAL**.”  *See id.*  Johannes' and Boshnack's Customer

Agreement explicitly notified them that if they did not want to be bound by its terms, they

needed to contact DIRECTV immediately so that their service could be canceled.  *See id.*, Ex. 1,

Introduction; *see also* Ex. 7.  But both Johannes and Boshnack chose to continue accepting

DIRECTV's service, and thus were legally bound to the terms and conditions of their Customer

Agreements.  *Id.*

      Because the arbitration clause at issue here is not procedurally unconscionable, and

because both procedural and substantive unconscionability must be shown to avoid the

arbitration agreement, the court can reject Johannes' and Boshnack's unconscionability

arguments on this ground alone.

      **2.**      **The agreement is not substantively unconscionable under Florida law.**

      A contract is substantively unconscionable under Florida law if its terms are so

“commercial[ly] unreasonable[]” and “unreasonably favorable to one party” that they are too

grossly unfair to be enforced.  *Garrett*, 480 So. 2d at 1326.  Here, the terms under which the

parties agreed to arbitrate are fair—not extreme or one-sided.  The agreement mutually binds

both DIRECTV and Johannes and Boshnack to arbitrate on an individual basis all claims that

arise between them.  *See* McCarthy Decl., Exs. 1 & 7 § 9(b) (“[A]ny Claim either of us asserts

will be resolved only by binding arbitration.”).  Moreover, the arbitration agreement defrays the

costs of arbitration for the customer, ensuring that he or she will pay no more than a maximum

$125 filing fee, if that.[1]  *See id.*  The arbitration agreement also ensures that the arbitration is

---

[1] DIRECTV has, as the Customer Agreement anticipates, agreed to pay the arbitration filing fees
on behalf of Johannes and Boshnack.  *See* Declaration of Kevin M. Askew, attached as Ex. B,
Ex. 1; McCarthy Decl., Exs. 1 & 7 § 9(b) (“Unless we agree to pay your fee for you, you only
need to pay an arbitration initiation fee . . . not to exceed $125 . . . ”).  The costs to Johannes and
Boshnack to arbitrate their individual claims are therefore zero.

convenient and affordable by providing that it take place in the customers' hometown area and be governed by the laws of the customers' home states. *Id.*, Exs. 1 & 7 §§ 9(b), 10(b). And to the extent that Plaintiffs incur attorneys' fees in connection with arbitrating the disputes, they may still seek recovery of those fees, just as they would in court, because the arbitration clause does not limit potential remedies. *Id.*, Exs. 1 & 7 § 9(b). Finally, the terms are not "commercially unreasonable" given the fact that arbitration agreements have become standard practice in consumer contracts in the telecommunications industry and other consumer contexts. *See* 83 AM. JUR. PROOF OF FACTS 3D 1, § 72 (2008) ("Arbitration is often incorporated into consumer, employment, health care, franchise, banking, credit card, financial, insurance, telecommunication service agreements and other contracts."). The arbitration agreement, therefore, does not unreasonably favor DIRECTV, is commercially reasonable, and is not substantively unconscionable.

Johannes and Boshnack will likely argue that the arbitration clause is substantively unconscionable because the parties agreed to individual, not class, arbitration. However, Florida law enforces arbitration provisions like the one contained in Johannes' and Boshnack's Customer Agreements. *See Cruz v. Cingular Wireless, LLC*, No. 2:07-CV-714-FtM-29DNF, 2008 WL 4279690, at *3-4 (M.D. Fla. Sept. 15, 2008) (compelling arbitration and enforcing class action waiver under Florida law where plaintiff could pursue all of the same remedies in arbitration as in court, and rejecting argument that the "small nature of individual claims" would prevent plaintiffs from effectively vindicating their rights); *Rivera*, 420 F. Supp. 2d at 1322 (holding, under Florida law, that "arbitration agreements precluding class-action relief are enforceable" and finding no unconscionability where plaintiffs could effectively vindicate their substantive rights in arbitration). Of particular importance to whether a class action waiver is enforceable is

the consumer's ability to recover attorneys' fees in conjunction with the claims being asserted. *See Cruz*, 2008 WL 4279690 at *3 (enforcing class action waiver where attorneys' fees available under statute were recoverable in arbitration); *Rivera*, 420 F. Supp. 2d at 1322 (same); *cf. S.D.S. Autos, Inc. v. Chrzanowski*, 976 So. 2d 600 (Fla. 1st DCA 2007) (deciding that class action waiver at issue in that case was unconscionable because plaintiffs' claims arose under a particular provision of Florida's Deceptive and Unfair Trade Practices Act which did not provide for recovery of attorneys' fees).

Here, the arbitration agreement does not impose burdensome costs, nor does it restrict Johannes' or Boshnack's substantive rights. Rather, it merely selects the forum—arbitration—in which the parties may seek the remedies available to them, including attorneys' fees where appropriate. *See* McCarthy Decl., Exs. 1 & 7 § 9(b). Therefore, under Florida law, the parties' arbitration agreement is not substantively unconscionable.

Johannes and Boshnack entered into arbitration agreements that govern this dispute, and those arbitration agreements are not unconscionable. Therefore, the Court should enforce the arbitration provision according to its terms, and compel arbitration of Johannes' and Boshnack's disputes with DIRECTV.

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT AND ASSUMPSIT/MONEY HAD AND RECEIVED.

If this Court declines to compel arbitration, Plaintiffs' claims for unjust enrichment (Count II) and assumpsit or money had and received (Count III) should be dismissed for failure to state a claim. Under "well-settled" Florida law, to state a claim for equitable causes of action

like unjust enrichment or money had and received,[2] "a party must allege that no adequate legal remedy exists."  *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (dismissing claim for breach of implied contract that was based on the same facts and allegations underlying statutory FDUTPA claim, and noting that "damages under the common law claim for breach of contract implied in law . . . are awarded on a theory of unjust enrichment"); *see also Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236-37 (S.D. Fla. 2007) (dismissing unjust enrichment claim in which plaintiffs sought recovery "for the exact same wrongful conduct as in their consumer fraud act claim").  Here, although Plaintiffs assert claims for unjust enrichment and assumpsit/money had and received, they never allege that they have no adequate legal remedy.  Compl. ¶¶ 60-70.  To the contrary, just as in *American Honda*, Plaintiffs base their equitable claims on the very same allegations that underlie their statutory FDUTPA claims—that DIRECTV wrongfully charged Plaintiffs early cancellation fees that it supposedly had no right to collect.  *See* Compl. ¶¶ 57, 61.  Thus, Plaintiffs have not adequately pled these claims, and the Court should dismiss them under Federal Rule of Civil Procedure 12(b)(6).

In addition, Boshnack's claims for unjust enrichment and assumpsit/money had and received should be dismissed because he has not pled an additional required element of those claims.  Both of these claims require that the defendant retain money belonging to the plaintiff.  *See Extraordinary Title Servs., LLC, v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009) (noting that elements of an unjust enrichment claim are that "defendant voluntarily accepts

---

[2] Plaintiffs' claim for assumpsit or money had and received is essentially identical to their claim for unjust enrichment.  *See Virgilio v. Ryland Group, Inc.*, No. 6:08-cv-815-Orl-31GJK, 2009 WL 320857, at *5-6 (M.D. Fla. Feb. 9, 2009) (dismissing claim for money had and received along with claim for unjust enrichment and finding that the "reasoning applicable to Plaintiffs' claim for unjust enrichment applies equally to Plaintiffs' claim for money had and received").

and retains [a] conferred benefit" and that "the circumstances are such that it would be inequitable for the defendant to retain the benefit") (quoting *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667  So. 2d 876, 879 (Fla. 3d DCA 1996)); *Sharp v. Bowling*, 511 So. 2d 363, 364-65 (Fla. 5th DCA 1987) (money had and received "constitutes a remedy at law to recover money erroneously paid [to] or received by a defendant when to permit the defendant to keep the money would unjustly deprive the plaintiff of his ownership of the money").  Boshnack, however, never makes this essential allegation because he has not paid an early cancellation fee on his current DIRECTV account and does not complain about the one he paid on his prior account—therefore he cannot now complain that DIRECTV has retained money that belongs to him.  As a result, Boshnack has not stated a claim for either unjust enrichment or money had and received, and the Court should thus dismiss both claims as to Boshnack.

## V.      CONCLUSION

Johannes and Boshnack each agreed to arbitrate, not litigate, this dispute.  Accordingly, DIRECTV respectfully requests that the Court dismiss or stay their complaints and compel them to arbitration.  Should the Court decline to compel arbitration, Counts II and III of Plaintiffs' Complaint, for unjust enrichment and assumpsit or money had and received, should be dismissed for failure to state a claim.

## <u>LOCAL RULE 7.1(A)(3) CERTIFICATION</u>

Undersigned counsel hereby certifies that they conferred with counsel for Plaintiffs in a good faith effort to resolve the issues raised in this motion, to no avail.

Respectfully submitted,

Dated: <u>June 12, 2009</u>                   By:   <u>/s/  Manuel A. Garcia-Linares</u>
                                                                  Manuel A. Garcia-Linares
                                                                  Florida Bar No. 985252
                                                                  mlinares@richmangreer.com
                                                                  Melissa Fernandez
                                                                  Florida Bar No. 665851
                                                                  mfernandez@richmangreer.com
                                                                  RICHMAN GREER, P.A.
                                                                  Miami Center – Suite 1000
                                                                  201 South Biscayne Boulevard
                                                                  Miami, Florida 33131
                                                                  Telephone: (305) 373-4000
                                                                  Facsimile: (305) 373-4099

                                                                  Melissa D. Ingalls (admitted *pro hac vice*)
                                                                  melissa.ingalls@kirkland.com
                                                                  Robyn E. Bladow (admitted *pro hac vice*)
                                                                  robyn.bladow@kirkland.com
                                                                  Kevin M. Askew (admitted *pro hac vice*)
                                                                  kevin.askew@kirkland.com
                                                                  KIRKLAND & ELLIS LLP
                                                                  777 S. Figueroa Street, Suite 3700
                                                                  Los Angeles, CA  90017
                                                                  Telephone: (213) 680-8400
                                                                  Facsimile:  (213) 680-8500

                                                                  *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on June 12, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


By:   /s/  Manuel A. Garcia-Linares
       Manuel A. Garcia-Linares

**SERVICE LIST**

*Johannes, et al. v. DIRECTV, Inc.*
CASE NO.: 09-CIV-60464-MORENO/TORRES

United States District Court, Southern District of Florida

| | |
|---|---|
| Scott W. Weinstein<br>sweinstein@forthepeople.com<br>Morgan & Morgan, P.A.<br>P. O. Box 9504<br>Fort Myers, FL 33906-9504<br>Phone: (239) 433-6880<br>Fax:  (239) 433-6836<br>*Attorneys for Plaintiffs*<br>**(VIA CM/ECF)** | Christa L. Collins<br>ccollins@clcfirm.co<br>1780 102nd Avenue North<br>Suite 100<br>St. Petersburg, FL 33716<br>Phone:  (727) 578-9628<br>Fax: (727) 578-3844<br>*Attorneys for Plaintiffs*<br>**(VIA CM/ECF)** |
| Ingrid M. Evans<br>jevans@waterskraus.com<br>Waters Kraus & Paul, LLP<br>601 Van Ness Avenue<br>Suite 2080<br>San Francisco, CA 94102<br>Phone: (415) 296-6060<br>Fax:  (214) 777-0470<br>*Attorneys for Plaintiffs*<br>**(VIA U.S. MAIL)** | Deanna D. Dailey<br>Sprenger & Lang<br>310 4th Avenue South<br>Suite 600<br>Minneapolis, MN 55415<br>Phone:  (612) 871-8910<br>Fax: (612) 871-9270<br>*Attorneys for Plaintiffs*<br>**(VIA U.S. MAIL)** |
| Todd Schneider<br>Schneider Wallace Cottrell<br>Brayton & Knockey, LLP<br>180 Montgomery Street<br>Suite 2000<br>San Francisco, CA 94104<br>Phone: (415) 421-7100<br>Fax: (415) 421-7105<br>*Attorneys for Plaintiffs*<br>**(VIA U.S. MAIL)** | Manuel A. Garcia-Linares<br>mlinares@richmangreer.com<br>Melissa Fernandez<br>mfernandez@richmangreer.com<br>Richman Greer, P.A.<br>Miami Center – Suite 1000<br>201 South Biscayne Boulevard<br>Miami, Florida 33131<br>Telephone: (305) 373-4000<br>Facsimile:  (305) 373-4099<br>*Attorneys for Defendant*<br>**(VIA CM/ECF)** |
| | |

| | |
|---|---|
| Melissa D. Ingalls<br>melissa.ingalls@kirkland.com<br>Robyn E. Bladow<br>robyn.bladow@kirkland.com<br>Kevin M. Askew<br>kevin.askew@kirkland.com<br>Kirkland & Ellis LLP<br>777 S. Figueroa Street, Suite 3700<br>Los Angeles, CA  90017<br>Phone: (213) 680-8400<br>Facsimile:  (213) 680-8500<br>*Attorneys for Defendant*<br>**(VIA CM/ECF)** | |